39328.   BUSH v. CITY OF GAINESVILLE.

Decided January 26, 1962—Rehearing denied
February 15, 1962.

*Whelchel, Dunlap & Gignilliat, William P. Whelchel,* for plaintiff in error.

*Kenyon, Kenyon & Gunter,* contra.

CUSTER, Judge. ■ Thompson Bridge Road, connecting Gainesville and Dahlonega, was made a part of the State-aid Road System from the then existing city limits of Gainesville north to Lumpkin County by Ga. L. 1937, p. 1008. By Ga. L. 1956, p. 2847, the municipal limits of Gainesville were extended to include an area to the north which took into the city that portion of Thompson Bridge Road on which the State Highway Department was making improvements and on which the fatal injury occurred.

Under *Code* § 69-303 municipalities generally have a ministerial duty to keep their streets in repair, and they are liable for injuries resulting from defects after actual notice, or after the defect has existed for a sufficient length of time for notice to be inferred. "A street is a road or public way in a city, town, or village, laid out and opened for travel by the public." *Robins v. McGehee,* 127 Ga. 431 (1) (56 SE 461). "Where territory is lawfully annexed to a city, the new area becomes 'a part of the city for all municipal purposes', and the public highways therein become streets of the city, and the city becomes chargeable with the duty of using reasonable diligence in seeing that they are placed and kept in such condition as will make passage thereon reasonably safe. As to defects existing in the highway at the time of the annexation, the city does not become chargeable with liability until it has discovered them, or, in the exercise of ordinary and reasonable diligence, should have discovered them,

and until it has then had a reasonable opportunity to remedy them." *Mayor &c. of Macon v. Morris*, 10 Ga. App. 298 (2) (73 SE 539); *Georgia Ry. &c. Co. v. Tompkins*, 138 Ga. 596 (75 SE 664). The general rule is that, when a municipal corporation is created, or its boundaries extended, it becomes vested with jurdisdiction over all the territory within its limits, and the mere fact that valuable improvements have been made by the county does not oust the city from jurisdiction. *Almand v. Atlanta Consolidated St. Ry. Co.*, 108 Ga. 417 (2), 426 (34 SE 6); *Marshall v. County of Floyd*, 145 Ga. 112, 119 (88 SE 943); *Wood v. Shore*, 160 Ga. 173 (1) (127 SE 145). A city, under proper charter authority, may change the course of a street in order to shorten and improve it, the termini remaining the same. *Adair v. Spellman Seminary*, 13 Ga. App. 600 (5), (79 SE 589); *City of Statesboro v. Dorman*, 203 Ga. 25 (5b) (45 SE2d 403).

It follows that unless the mere facts that legal title in the land was in the county and that the road was a part of the State-aid Road System remove this thoroughfare from the general rule, the city is liable for the defect in the street if it had sufficient notice thereof. On the question of notice there was ample evidence to take the case to the jury. As to the effect on the city's liability of the fact that paving was being done by the State Highway Department in connection with an alteration in and straightening out of the road (the termini remaining the same), this question is settled adversely to the defendant by Ga. L. 1937, p. 1081 et seq., expressly providing for the inclusion of streets in municipalities within the State-aid Road System, and further providing, in *Code* § 95-1729: "Nothing [herein] shall be construed as relieving the several municipalities of the State of the duty of maintaining their streets in a reasonably safe condition." This Code section was in effect in 1958 when the injury occurred, although under Ga. L. 1961, pp. 469, 471, *Code* § 95-1729 was repealed and a new *Code* § 95-1741 was added, expressly relieving municipalities from liability for defects resulting from the failure of the State Highway Board to maintain portions of the State-aid system of roads lying within the corporate limits of any municipality which it is said Board's

responsibility to maintain. When the municipality acquired the area to its north it acquired the streets therein, and the fact that a part of one of the streets was also a part of the State Highway System and was under construction by the State Highway Department did not relieve the city of its duty to see that it was properly maintained for traffic *after* it became the only Thompson Bridge Road open for traffic; that is, after it became impossible to use the segment of road existing when the city acquired it because of the substitution of the portion under construction for the portion previously used. We hold that under these circumstances the city street continues its identity as such and is not merely a new road.

It is true, as contended by the defendant, that *Code* § 95-1726, a part of the act of 1937 amending State-Aid Road System law as contained in *Code Chapter* 95-17, provides that streets within municipalities shall be a part of the system "for the purposes of construction and maintenance thereof by the State Highway Board from State highway funds allocated to such Board for the construction and maintenance of roads in this State," but, as pointed out above, this shall not relieve municipalities of the duty to maintain their streets, although the State Highway Department is chargeable with the cost. Municipalities, being governmental subdivisions, are chargeable with the duty of maintaining their streets in a safe condition only to the extent the statute law makes them so, for they were immune at common law, and the liability may or may not exist, and may or may not be predicated upon negligence or notice, as the law directs, but where the municipality is under such statutory duty to maintain a street it cannot escape liability for failure to do so by reason of the failure of another political agency or third party also charged with the duty of keeping it in repair. 40 C. J.S. 280, Highways, § 250.

It follows that the trial court erred in granting the motion for a directed verdict on the theory that the city had no duty to maintain this portion of its street system.

■ There was also undisputed evidence in the record that the road was being heavily traveled, and that the road traveled was "Thompson Bridge Road"; that is, that the portion of the

■

old roadway which was being straightened out had been cut off from the road by ditches and could not be used, so that the route taken by the plaintiff's husband was the only possible route. Where construction is in progress on a road, the question of whether or not it is in fact open for travel in such manner that an implied invitation to use it has been extended to the public, as well as the question of whether one using such a road is in the exercise of ordinary care for his own safety, is for the jury. *Powell v. Barker,* 96 Ga. App. 592 (3) (101 SE2d 113).

■ It was not error to admit evidence regarding the contracts between the county and the State Highway Department under which the work was proceeding, as this evidence was proper to explain the physical changes being made in the road, but on another trial the court should restrict the evidence to this purpose, and charge the jury in such manner that they will understand that this evidence, in and of itself, does not relieve the city of its duty to maintain its streets in such manner that travelers are not injured as a result of defects in their condition. Other evidence in the record pertinent to this issue consists of testimony that, although the road had not been completed in its entirety and accepted by the State Highway Department, for some time prior to the injury and while the road was open to unrestricted traffic the Department was doing no work at all upon it, but was waiting for the road base to settle before going back to apply the asphalt topcoating.

The trial court erred in directing a verdict in favor of the defendant.

*Judgment reversed. Carlisle, P. J., and Eberhardt, J., concur.*