A94A0341. McLEMORE et al. v. CITY COUNCIL OF
AUGUSTA et al.
(443 SE2d 505)

POPE, Chief Judge.

Plaintiffs Odie and Dot McLemore appeal from the trial court's grant of summary judgment in favor of defendants City Council of Augusta, Georgia (the city) and Anthony Charles Powell on the grounds that both defendants had immunity under the facts of this case. This action arises from a traffic accident which occurred when the police vehicle driven by Powell, who at that time was an officer of the Augusta Police Department, collided with a vehicle driven by Odie McLemore.

The accident occurred on April 9, 1991. At approximately 9:00 a.m. that day, Powell and other officers were dispatched to respond to an emergency alarm emitting from another officer's car. Powell turned on his blue lights and proceeded toward the emergency dispatch. Powell first went through the intersection where the accident occurred traveling westward. Powell testified that approximately one block away from that intersection, he realized he had to turn back to reach the officer's location, and therefore made a U-turn and proceeded in the opposite direction. As he entered the intersection again, against a red light, he struck the car driven by McLemore.

It is undisputed that until Powell made the U-turn his blue lights were flashing. Witnesses testified that after making the turn Powell's blue lights were off. Powell admits that his blue lights were off at the time of the accident, although he does not remember turning them off.

In granting summary judgment to the defendant city, the trial court based its decision on three grounds: (1) the city cannot be held liable for the alleged tortious acts of Powell pursuant to OCGA § 36-33-3; (2) the act giving rise to the alleged liability in this case was a governmental function entitling the city to immunity pursuant to OCGA § 36-33-1 (b); and (3) the 1991 Amendment to Art. I, Sec. II, Par. IX of the Georgia Constitution is applicable to cities and pro-

vides that municipalities do not waive their sovereign immunity by obtaining liability insurance. The trial court granted summary judgment to defendant Powell on the ground that his actions at the time of the accident were discretionary in nature rather than ministerial, entitling him to summary judgment.

1. Initially, we note our Supreme Court recently held that the 1991 Amendment to Art. I, Sec. II, Par. IX is not applicable to municipalities. *City of Thomaston v. Bridges*, 264 Ga. 4 (439 SE2d 906) (1994).

2. We next consider whether the trial court properly granted summary judgment to the defendants based on OCGA § 36-33-3.

(a) OCGA § 36-33-3 provides: "A municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law." As the trial court correctly noted, this statute generally relieves a city of liability for the alleged torts of police officers engaged in the discharge of their duties. *Poss v. City of North Augusta, S. C.*, 205 Ga. App. 894 (424 SE2d 73) (1992). The trial court failed to note, however, that in *Ekarika v. City of East Point*, 204 Ga. App. 731 (420 SE2d 391) (1992), this court held that OCGA § 36-33-3 is a governmental immunity statute and as such is subject to the waiver of immunity provision contained in OCGA § 33-24-51 (b). That statute provides in pertinent part that municipalities can by purchasing insurance "provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties."

(b) The city argues it has not waived its immunity through the purchase of insurance. The city contends that although it has a policy covering claims in excess of $250,000, its policy is not a policy within the meaning of OCGA § 33-24-51 because its policy is a general liability policy rather than an automobile liability policy. However, it is the nature of the insurance coverage provided by a policy rather than title of the policy which determines if it is a policy within the meaning of OCGA § 33-24-51. The language of the policy in question is sufficient to encompass claims arising from an automobile collision which exceed the $250,000 minimum. Accordingly, the general liability insurance policy purchased by the city is a policy within the meaning of OCGA § 33-24-51. Because the city has insurance as contemplated by OCGA § 33-24-51, it follows that the city can be held liable for the alleged negligence of Powell to the limits of its insurance policy covering the same.

(c) Relying on our Supreme Court's decisions in *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992); *Hiers v. City of Barwick*, 262 Ga. 129 (414 SE2d 647) (1992) and *Price v. Dept. of Transp.*, 257 Ga. 535 (361 SE2d 146) (1987), plaintiffs argue the city is self-insured for all amounts for which it is held

liable up to the $250,000 threshold of its insurance policy. The city maintains it is uninsured up to the $250,000 threshold. Both the city administrator and an insurance claims representative who handled claims on behalf of the city testified that the city did not have a self-insurance plan for claims not exceeding $250,000, that the city did not participate in any sort of insurance fund or pool, and that the city did not set aside funds specifically for the purpose of paying liability claims. The evidence presented by the plaintiffs on this issue did not refute that testimony.

The cases relied upon by plaintiffs are factually distinguishable from this case. In *Litterilla*, the hospital authority maintained a commercial liability policy covering all claims in excess of $2,000,000 and a liability trust fund for other claims. Our Supreme Court held the liability trust fund constituted liability insurance protection. 262 Ga. at 36. In *Hiers*, the city participated in the Georgia Interlocal Risk Management Agency (GIRMA), which was created pursuant to OCGA § 36-85-1 et seq. Our Supreme Court held that even though the act creating the GIRMA provided that participation in that agency did not constitute a waiver of immunity, a statute which sought to reserve immunity despite the existence of liability insurance could not stand in light of the mandate of Art. I, Sec. II, Par. IX of the Georgia Constitution, before it was amended in 1991. 262 Ga. at 131. In *Price*, the DOT had an insurance policy which named employees as insureds. The court held that such a policy constituted a waiver of sovereign immunity. 257 Ga. at 537.

"Sovereign immunity is not an affirmative defense . . . that must be established by the party seeking its protection. Instead, immunity from suit is a privilege that is subject to waiver by the [city], and the waiver must be established by the party seeking to benefit from the waiver. [Cit.]" *Ga. Dept. of Human Resources v. Poss*, 263 Ga. 347, 348 (1) (434 SE2d 488) (1993). Plaintiffs have not met that burden as they did not present evidence that the city has insurance coverage other than the policy which covers claims in excess of $250,000.[1]

3. The trial court also erred by holding that any immunity provided to municipalities pursuant to OCGA § 36-33-1 is not waived by the purchase of insurance. OCGA § 36-33-1 (a); *Hiers*, supra. Thus, to the extent the city is entitled to immunity pursuant to OCGA § 36-33-1, its immunity is waived to the extent it has insurance as

---

[1] Although the city's waiver of immunity for claims exceeding $250,000 creates an anomalous result by allowing the plaintiff to recover only damages exceeding $250,000, we note that Georgia law allowing recovery against a sovereign only to the extent that there is available insurance proceeds is consistent with several sisters' jurisdictions that have similar statutes. See, e.g., *Evanston Ins. Co. v. City of Homestead*, 563 S2d 755 (Fla. App. 1990); *Espinosa v. Southern Pac. Transp. Co.*, 635 P2d 638 (Or. 1981).

discussed supra. Contrary to the trial court's holding, the city can be held liable pursuant to either OCGA § 36-33-1 or § 36-33-3 for the alleged negligent acts of Powell for all amounts exceeding the minimum threshold of its insurance coverage of $250,000.

4. Because Powell was acting in his official capacity at the time of the accident, he is entitled to immunity if his allegedly negligent act was discretionary rather than ministerial. See *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980). Our Supreme Court's decision in *Logue v. Wright*, 260 Ga. 206 (392 SE2d 235) (1990) is instructive concerning whether the officer's acts were discretionary or ministerial in nature.

In *Logue*, a police officer, responding to a dispatched call concerning a fight, entered an intersection without using his siren or blue light and struck a vehicle in that intersection. Id. at 207. Our Supreme Court held that although the officer performed his duties negligently by proceeding through the intersection without activating his blue light in contravention of OCGA § 40-6-6, immunity still attached because it is the nature of the official's action rather than the manner in which the official performed the action that determines whether the official is entitled to immunity. The Court further held that the decision of whether to rush to "the scene of disorder" lay within the officer's discretion, thus entitling him to immunity. Id. at 208.

Pursuant to *Logue*, if Powell was responding to an emergency call of the other officer his allegedly negligent act would be discretionary in nature; however, if he had returned to routine patrol his conduct would be considered ministerial in nature. See *Joyce v. Van Arsdale*, 196 Ga. App. 95 (395 SE2d 275) (1990). In this case, unlike *Logue*, there remains an issue of material fact that must be resolved by a jury before the trial court can properly determine whether his allegedly negligent act was discretionary in nature.

Powell testified that after he was dispatched to the emergency call of another officer, he heard that officer come on the radio, give his location as Seventh Street and attempt to clear the emergency. Several officers, including Powell, testified that the proper procedure was not used to clear the emergency. Because the officer did not at first clear the emergency call for assistance properly, it was within Powell's discretion to decide whether to continue to respond to that call as an emergency. Powell testified he called the dispatcher and stated that because the emergency had not been cleared properly he was continuing to respond to it, and the dispatcher acknowledged his call. Powell further testified that he was traveling westerly on Walton Way past Eighth Street at the time he heard the officer attempt to clear the emergency call and state his location on Seventh Street. For that reason he testified he made a U-turn and began to travel easterly on

Walton Way before re-entering the intersection of Walton Way and Eighth Street striking the McLemore vehicle. However, in the affidavit of the officer who created the emergency, that officer averred his location at the time of the emergency call was at a service station located at Fifteenth Street and Laney Walker Boulevard. That station is located west of the area where Powell made his U-turn and began to proceed easterly. Accordingly, a jury issue is presented concerning whether Powell was continuing to respond to the emergency call at the time of the accident. See *Joyce*, supra.

*Judgment vacated and remanded for proceedings consistent with this opinion. McMurray, P. J., and Smith, J., concur.*

DECIDED MARCH 22, 1994 —
RECONSIDERATION DENIED APRIL 11, 1994.

*David B. Bell*, for appellants.

*Hull, Towill, Norman & Barrett, George R. Hall, Capers, Dunbar, Sanders, Bruckner & Clarke, E. Freddie Sanders, Ziva P. Bruckner*, for appellees.